IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JUSTIN CLYDE HUGHES, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:20cv00061 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DR. SMITH, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
|     Defendants. | ) |          United States District Judge |

Plaintiff Justin Clyde Hughes, a Virginia inmate proceeding *pro se*, filed this civil action pursuant to 42 U.S.C. § 1983, against Dr. Smith, RN Mullins, Lieutenant Hughes, and C/O Meredith.[1] Having reviewed Hughes's original and amended complaints, the court concludes that Hughes fails to state a cognizable federal claim against the named defendants. The court will therefore dismiss Hughes's amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

In his original complaint, Hughes alleges that, on March 6, 2019, he cut himself and began to bleed profusely. According to Hughes, this injury required a blood transfusion.[2] He was treated at the prison medical facilities, where he was monitored for 20 to 24 hours before being sent to a hospital. He claims that the failure to immediately send him to the hospital was an act of gross negligence and deliberate indifference towards his health. In his amended complaint, Hughes adds that defendant RN Mullins let his "nose bleed freely without getting it to stop bleeding."

---

[1] Hughes does not provide any other information about the defendants.

[2] Although Hughes's amended complaint (ECF No. 12) is the operative one, his original complaint contains more detail. Therefore, certain factual elements are drawn from his original complaint (ECF No. 1).

Hughes also alleges that, after the issue with the bleeding, he was put in a mental-health cell and overdosed on "Tegratol [*sic*],"³ which caused him to urinate, defecate, and vomit on himself. He claims that was "was not pulled out and cleaned up which put [his] health and safety at risk." As relief, Hughes seeks $10,000 and improvements to the prison's mental health services. He also claims he "overdosed" on medication and was not sent to a hospital. In his amended complaint, Hughes adds that defendant "Dr. Smith could clearly see that [he] was overdosed on medication [and] it was like [he] was drunk[, but Dr. Smith] failed to provide proper Healthcare by sending [Hughes] out."

To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988). To show a constitutional violation regarding medical treatment received while in prison, the plaintiff must demonstrate that the defendants acted with "deliberate indifference" towards his "serious medical need[]." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). "[A] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir.1999)). Deliberate indifference is the "sufficiently capable state of mind" required by the defendant to violate a prisoner's constitutional rights. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A showing of deliberate

---

³ Tegretol is a medication that is used to prevent and control seizures. Some forms of Tegretol are used to treat bipolar disorder. WebMD, "Tegretol XR Oral," *available at* www.webmd.com/drugs/2/drug-13503/tegretol-xr-oral/ (last visited April 5, 2021).

indifference requires "'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (alteration in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). When evaluating such claims, courts use a subjective standard, requiring that the defendant prison official "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference." *Farmer*, 511 U.S. at 837.

Despite having the opportunity to amend his complaint, Hughes has not alleged sufficient facts for the court to determine that the medical treatment he received violated his constitutionally protected rights; in fact, his amended complaint contains *fewer* factual allegations than his original one. But even accepting the factual allegations *en toto*, the facts Hughes has alleged do not show that the prison officials acted with the required mental state for a § 1983 action. Hughes states that he received a blood transfusion in response to his self-inflicted wound (or broken nose) and loss of blood therefrom. According to his complaints, he was treated at the prison medical facilities for 20 to 24 hours before being sent to the hospital. The gravamen of Hughes's allegations is that, since he was not sent to the hospital immediately, the named defendants acted with deliberate indifference to his health. However, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir.1970). Medical staff at Virginia's correctional facilities routinely provide medical care to inmates, and no exceptional circumstances are alleged here.

Regarding Hughes's allegations that he overdosed on Tegretol,[4] he does not allege anything beyond the fact of his overdose and subsequent physiological response. Specifically, he does not claim that any of the named defendants prescribed or administered his medication; that they were aware he was on Tegretol or had taken any; or that he had taken (or been prescribed or administered) too much of it. Insofar as Hughes asserts that he had to lie in his own urine, feces, and vomit, he has not alleged (1) how long this lasted, or (2) whether, or for how long, anyone, including specifically the named defendants, was aware of his condition. Hughes summarily alleges that the defendants put his health and safety at risk, but conclusory allegations without critical factual support are insufficient to state a claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Absent any allegations from which the court could infer wrongful acts on the part of the named defendants, Hughes's amended complaint cannot proceed.

Finally, in regard to defendant "C/O Meredith," Hughes does not allege any actions by him at all. As such, Hughes has failed to state any claim against C/O Meredith, and the action must be dismissed against him.

---

[4] Hughes's complaints are unclear on whether *he* overdosed on Tegretol or whether he was administered *too much* by someone in the medical unit. The court reads his complaint to allege that *he* overdosed on the medication, which clarifies his claims to one regarding a disagreement over the proper course of treatment; Hughes alleges he should have been sent to a hospital immediately, while the defendants treated him for 20 to 24 hours before sending him out. As noted, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright*, 766 F.2d at 849 (citing *Gittlemacker*, 428 F.2d at 6). Hughes has not alleged any exceptional circumstances with regard to his overdose.

For these reasons, although the court will grant Hughes's motion to proceed *in forma pauperis* and the court will dismiss this action under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

The Clerk shall send a copy of this memorandum opinion and accompanying order to the Hughes.

**ENTERED** this 6th day of April, 2021.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE